UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

WILLIAM EARNEST,

    Defendant.

Case No. 3:21-cr-104

District Judge Michael J. Newman

---

**ORDER OVERRULING DEFENDANT'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT (DOC. NO. 31)**

---

Defendant entered a Fed. R. Civ. P. 11(c)(1)(C) guilty plea to a superseding indictment charging him with one count of possession with intent to distribute 40 or more grams of fentanyl, 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Doc. No. 20 at PageID 65. Now before the Court are his objections to the Probation Department's ("Probation's") application of certain special offense characteristics in its Presentence Investigation Report ("PSR"). Doc. No. 31; Fed. R. Crim. P. 32(f). The Court held an evidentiary hearing on Defendant's objections on February 9, 2022 with Defendant present and represented by counsel. An FBI Agent who investigated Defendant testified. Both sides have briefed their position on Defendant's objections. Doc. Nos. 31, 34, 35. Defendant's objections are now ripe for review.

**I.**

    **A.**    **Background**

FBI agents learned that Defendant -- who was previously charged in a narcotics distribution scheme -- was trafficking narcotics in Dayton. Doc. No. 31 at PageID 138–39. They initiated surveillance on Defendant and observed him drive between his home on Upland Avenue to a one-

bedroom apartment on Hepburn Avenue. *Id.* A confidential informant set up several controlled buys with Defendant. *Id.* On at least one occasion, agents watched Defendant exit the Hepburn Avenue apartment to complete a sale before returning to Upland Avenue. *Id.*

During an August 26, 2020 controlled buy, agents tracked Defendant as he left his Upland Avenue home and entered the Hepburn Avenue apartment. *Id.* at PageID 139. He emerged several minutes later and engaged in a hand-to-hand transaction before reentering the Hepburn Avenue apartment. *Id.* Defendant exited the Hepburn Avenue apartment later that day, drove away in his truck, and was pursued, and detained, by FBI agents. *Id.*

A search of Defendant revealed keys to the Hepburn Avenue apartment. *Id.* Agents used the keys to execute a search warrant on the Hepburn Avenue apartment. *Id.* Inside, agents found fentanyl and methamphetamine, as well as narcotic production devices like blenders, scales, and cutting agents. *Id.*

Agents discovered several firearms in the Hepburn Avenue apartment, too. *Id.* They found a revolver hidden beneath a couch cushion. *Id.* Agents located a pistol under the couch. *Id.* They also found a "AR-style" rifle underneath the mattress in the bedroom. *Id.*

Documents bearing Defendant's name were recovered from the apartment. *Id.* One was an insurance document. *Id.* The other was a prescription pill bottle. *Id.*

Agents arrested Defendant after searching the Hepburn Avenue apartment. *Id.* He agreed to talk to them and explained that the apartment belonged to his friend, Bean, who was currently incarcerated. *Id.* at PageID 139–40. Defendant mentioned Bean would let him stay there overnight if he was fighting with his wife. *Id.*

He also acknowledged that he and Bean stored, prepared, and packaged narcotics in the apartment. *Id.* Defendant added that August 26, 2020 was the first time he sold narcotics so close

to the apartment. *Id.* Normally, he explained, they would distribute narcotics farther from the apartment. *Id.*

Defendant initially denied knowledge of the firearms. *Id.* But he later conceded that he knew there was a revolver underneath the couch cushion. *Id.* Defendant's description of the revolver matched the one recovered from the Hepburn Avenue apartment. *Id.*

**B.     Presentence Investigation Report**

Probation, in compiling its PSR, recommended that the Court apply two special offense characteristics in calculating Defendant's Sentencing Guidelines range. Doc. No. 31 at PageID 141. One for possession "of a dangerous weapon (including a firearm)" during a drug-trafficking offense. *Id.* (quoting U.S.S.G. § 2D1.1(b)(1)). The other because Defendant allegedly "maintained a premises for the purpose of manufacturing or distributing a controlled substance." *Id.* (quoting U.S.S.G. § 2D1.1(b)(12)). Each special offense characteristic calls for a 2-level total offense score increase. U.S.S.G. §§ 2D1.1(b)(1) and (12).

Defendant objects to Probation's application of the special offense characteristic factors. Doc. No. 31 at PageID 177. First, he argues Probation erroneously concluded he possessed a firearm in connection with the offense because his DNA was never found on any of the guns stored in the Hepburn Avenue Apartment. *Id.* Nor, he claims, is there any indication he used a firearm while conducting the controlled buys. *Id.* Defendant also insists that he did not "maintain" the Hepburn Avenue apartment to facilitate narcotics trafficking because he was not on the lease and only stayed there occasionally. *Id.* at PageID 178.

The Government disagrees. It characterizes the Hepburn Avenue apartment as a stash house controlled by Defendant. *Id.* The Government points out that Defendant and Bean packaged and stored narcotics at the apartment, and Defendant was aware that at least one firearm was stored

3

there. *Id.* Defendant's completion of a sale near the apartment, according to the Government, shows he could have, if needed, accessed the firearm to facilitate his narcotics trafficking. *Id.*

The Court will review the objections in turn.

## II.

Probation's Sentencing Guideline recommendations are not binding on the Court. The Court's Sentencing Guidelines calculation is the "lodest[ar]" of every sentence fashioned. *Peugh v. United States*, 569 U.S. 530, 544 (2013). This is true even if, as is the case here, the parties agree to a sentence in a Rule 11(c)(1)(C) plea agreement. *See, e.g.*, *Hughes v. United States*, --- U.S. ---, 138 S. Ct. 1765, 1776 (2018) ("A sentence imposed pursuant to a [Rule 11(c)(1)(C)] agreement is no exception to the general rule that a defendant's Guidelines range is both the starting point and a basis for his ultimate sentence"); *see also* U.S.S.G. § 6B1.2(c) (providing that the Court must first identify a defendant's Sentencing Guidelines range before accepting a proposed Rule 11(c)(1)(C) sentence). The Government, if it believes a sentencing enhancement is warranted, must demonstrate its applicability by a preponderance of the evidence. *See, e.g.*, *United States v. Angel*, 576 F.3d 318, 321 (6th Cir. 2009).

### A. Drug-Premises Enhancement

A two level increase to a defendant's total offense level is warranted "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). A premises can be "a building, room, or enclosure." U.S.S.G. § 2D1.1 n.17. "Maintain[ing]" a premises for drug trafficking depends on whether the defendant "(A) . . . owned or rented[] or rented the premises" and "(B) the extent to which the defendant controlled access to, or activities at, the premises." *Id.* "In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing

4

a controlled substance and how frequently the premises was used by the defendant for lawful purposes." *Id.*

Bean, not Defendant, leased the Hepburn Avenue apartment. Even though Defendant lacked a possessory interest in the apartment, "he may still be found to maintain it 'if the government makes a sufficient showing of de facto control.'" *United States v. Broadnax*, 777 F. App'x 137, 141 (6th Cir. 2019) (quoting *United States v. Hernandez*, 721 F. App'x 479, 484 (6th Cir. 2018)). "Evidence of maintenance can be shown by facts showing 'control, duration, acquisition of the site, renting or furnishing the site, supervising, protecting, supplying food to those at the site, and maintaining continuity.'" *Id.* "Moreover, '[a]lthough a person need not be present at the location constantly for the enhancement to apply, the word *maintains* 'contemplates a defendant who is more than a casual visitor.'" *Id.* (quoting *United States v. Flores-Olague*, 717 F.3d 526, 532 (7th Cir. 2013)) (emphasis in original).

Defendant exerted sufficient control over the Hepburn Avenue apartment such that he "maintained it." Defendant explained to an FBI agent that he frequently checked on the apartment while Bean was incarcerated. Doc. No. 31 at PageID 139–40. He had keys to the apartment, allowing him to come and go when he pleased. *Id.* Indeed, he stayed there when he and his wife were fighting. *Id.* Defendant spent enough time at the apartment to leave behind insurance documents and a prescription pill bottle. *Id.* He was more than just an occasional visitor to the apartment.

This enhancement attaches if a premises' "primary or principal purpose" is drug manufacturing or trafficking. U.S.S.G. § 2D1.1 n.17. "'[T]he more characteristics of a business that are present' in the home -- such as 'tools of the trade (*e.g.*, laboratory equipment, scales, guns and ammunition to protect the inventory and profits) -- the more likely it is that the property is

being used for the purpose of [prohibited] drug activities.'" *United States v. Johnson*, 737 F.3d 444, 447–48 (6th Cir. 2013) (quoting *United States v. Verners*, 53 F.3d 291, 296–97 (10th Cir. 1995)) (cleaned up). "At bottom, the question is whether [the Hepburn Avenue apartment] 'played a significant part' in distributing drugs." *United States v. Bell*, 766 F.3d 634, 637 (6th Cir. 2014) (quoting *Johnson*, 737 F.3d at 449).

Defendant principally used the Hepburn Avenue apartment to further his drug trade. He and Bean kept items essential to their efforts throughout the unit. Doc. No. 31 at PageID 139–40. Agents found fentanyl and methamphetamine in the dining room. *Id.* They also found scales, blenders, cutting agents, and narcotic packaging equipment next to the drugs. *Id.* Agents recovered three firearms from the living room and bedroom. *Id.*

Defendant admitted that he stored narcotics at the Hepburn Avenue apartment for future sale. *Id.* He usually picked up the narcotics at the apartment before driving to complete a transaction. *Id.* In at least one instance, Defendant engaged in a drug transaction on Hepburn Avenue with narcotics retrieved from inside the apartment. *Id.* Defendant also revealed he would leave a portion of the proceeds from his sales at the apartment. *Id.* All this shows his use of the Hepburn Avenue apartment to trafficked narcotics far outweighed any other reason he frequented it. *Id.*

Defendant's objection to Probation's application of the drug-premises enhancement is **OVERRULED**.

### B. Gun-Possession Enhancement

A two level increase to a defendant's total offense score is applied if "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). "The government must prove by a preponderance of the evidence 'that (1) the defendant actually or constructively "possessed" the weapon, and (2) such possession was during the commission of the offense.'"

*United States v. Johnson*, 344 F.3d 562, 565 (6th Cir. 2003) (quoting *United States v. Pruitt*, 156 F.3d 638, 649 (6th Cir. 1998)).  Once the government establishes "that a defendant was in possession of a firearm, the burden shifts to the defendant to establish that 'it is clearly improbable that the weapon was connected [with] the offense.'"  *Id.* (quoting U.S.S.G. § 2D1.1 n.11(A)).

"Constructive possession is established in the absence of physical possession if the defendant 'knowingly has the power and intention at a given time to exercise dominion and control over an object, either directly or through others.'"  *United States v. Johnson*, 658 F. App'x 236, 240–41 (6th Cir. 2016) (quoting *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008)).  "[T]he element of possession can be proven by either direct or circumstantial evidence."  *Id.* (quoting *United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir. 2007)).  Dominion and control over the space in which the firearm is found is sufficient to establish constructive possession.  *See, e.g.*, *United States v. Harris*, 443 F. App'x 111, 114–16 (6th Cir. 2011) (upholding finding of constructive possession of firearms found in a bedroom containing mail addressed to the defendant and clothing belonging to an adult male).

Defendant argues that the Government cannot prove he possessed the firearms in the Hepburn Avenue apartment without showing he physically held them.  Doc. No. 31 at PageID 177.  This is incorrect.  It is sufficient that agents found the firearms in an area over which Defendant exercised control.  *See, e.g.*, *Johnson*, 658 F. App'x at 240–41.

Defendant acknowledged as much here.  He admitted he was aware of the revolver hidden beneath the couch cushion, and his description of the gun matched that which was recovered.  Doc. No. 31 at PageID 139–40.  Defendant could freely come-and-go from the apartment, and the record contains no indication there was an area in the apartment he could not access.  *Id.*  Even though others, including Bean, could access the apartment, possession of a firearm "need not be exclusive

7

but may be joint." *United States v. Hadley*, 431 F.3d 484, 507 (6th Cir. 2005) (quoting *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973)).

Constructive possession does not require direct proof Defendant used a firearm to commit the offense. *See, e.g.*, *United States v. Ayala-Vieyra*, No. 21-1177, 2022 WL 190756, at *6 (6th Cir. Jan. 21, 2022) ("We have consistently held that constructive possession can be shown where contraband is found in" a space the defendant exerts dominion and control over (citing *United States v. Brown*, 856 F. App'x 36, 40 (6th Cir. 2021)). What matters is access and opportunity. *See, e.g.*, *Harris*, 443 F. App'x at 116 (concluding a reasonable jury could find that the defendant constructively possessed a firearm because it was "readily accessible . . . to protect the residence and the drug trafficking activity occurring within it"). The Government has shown Defendant frequently picked up narcotics from the Hepburn Avenue apartment before distributing them and typically returned there to deposit proceeds. Doc. No. 31 at PageID 139–40. Defendant admitted he was aware of at least one of the firearms in the apartment. *Id.* He therefore had the ability to bring a firearm with him to further his drug trafficking activities. *Id.*

Defendant's objection to the firearm-use enhancement is **OVERRULED**.

### III.

For the foregoing reasons, Defendant's objections to the PSR are **OVERRULED**.

**IT IS SO ORDERED.**

Date: March 1, 2022   s/Michael J. Newman
  Hon. Michael J. Newman
  United States District Judge